UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YUNIESKY MOLINA PEREZ,

      Petitioner,

    v.

WARDEN, SOUTH FLORIDA
DETENTION FACILITY,  U.S.
ATTORNEY GENERAL,

      Respondents.

Case No. 2:26-cv-1631-KCD-KRH

_____/

## ORDER

Petitioner Yuniesky Molina Perez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment. Respondents oppose the petition. (Doc. 8.) For the reasons below, the petition is **DENIED WITHOUT PREJUDICE**.

## I. Background

Perez is a native of Cuba who entered the United States in 2004. (Doc. 8-1 at 2.) An immigration judge ordered his removal in 2012. After several arrests and convictions, Perez was placed in immigration custody on November 19, 2025, to execute the removal order. According to the

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

unrebutted record, on February 2, 2026, ICE transported Perez to the southern border to remove him to Mexico, but he did not cooperate. (Doc. 8-2.) He refused to get on the bus. (*Id.* at 2.) This habeas petition followed.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

### A. Substantive Due Process

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

2

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft,* 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

ICE took Perez into custody on November 19, 2025, which is beyond six months. But according to the unrebutted record, he has refused removal to Mexico. (Doc. 8-2.) Such conduct tolls the detention period. *See Akinwale*, 287 F.3d at 1052 n.4 (stating that "removal period shall be extended ... if the alien ... acts to prevent the alien's removal subject to an order of removal").

Under 8 U.S.C. § 1231(a)(1)(C), the removal clock stops ticking if an alien refuses to cooperate in obtaining travel documents. It also tolls if the alien "conspires or acts to prevent [his] removal." *Id.* Common sense (and the Eleventh Circuit) tells us that a person cannot actively thwart his own deportation and then use the resulting delay to demand his freedom. Whether by stubbornly withholding a signature on a required form or by affirmatively taking steps to sabotage the government's efforts, an alien who engineers his own prolonged detention cannot turn around and complain about it. The law does not reward that kind of gamesmanship. *See Quo Zing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal.").

That is precisely the game Perez is playing here. He claims his detention violates the Fifth Amendment, yet his refusal to cooperate with ICE is the very roadblock keeping him in custody.[2] If he signs the paperwork and gets off the bus, his removal is reasonably foreseeable; if he does not, the delay is entirely of his own making. Because Perez is apparently responsible

---

[2] The Immigration and Nationality Act does not leave an individual without recourse if he objects to his designated destination. The statute provides a framework for contesting removal to a specific third country. *See* 8 U.S.C. § 1231(b). But nowhere in his petition does Perez allege—let alone offer evidence to show—that he has formally challenged his proposed removal to Mexico. Instead, he has apparently dug in his heels and refused to physically depart the United States. Because it seems he bypassed the proper legal channels for contesting his destination, the Court accepts he is legally subject to removal to Mexico.

for stalling his own departure, the presumptively reasonable period for his detention is tolled.

### B. Procedural Due Process

As best the Court can tell, Perez also presses a procedural due process claim. But it's not entirely clear which process he failed to receive. He seems to argue that he was not provided an opportunity to contest his detention. Yet it isn't clear that Perez is entitled to a freestanding due process analysis at this time. When the Supreme Court confronted the constitutional perils of indefinite immigration detention in *Zadvydas*, it did not instruct lower courts to start weighing the process afforded to the detainee. It set a timer. For the first six months, detention is presumptively reasonable. 533 U.S. 678, 701 (2001). So until that timer goes off, *Zadvydas* itself supplies the constitutional metric. *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the *Zadvydas* standard is due process: a § 1231 detainee who fails the Zadvydas test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024).

### C. Conditions of Confinement

Perez also alleges that his medical care in confinement is delayed or inadequate. (Doc. 1 at 7.) To the extent this is an argument for habeas relief, it is summarily rejected. Challenges to conditions of confinement are not appropriately raised in the habeas context. *See Vaz v. Skinner*, 634 F. App'x

5

778, 781 (11th Cir. 2015) ("Petitioner's § 2241 petition is not the appropriate vehicle for raising an inadequate medical care claim, as such a claim challenges the conditions of confinement, not the fact or duration of that confinement.").

### III. Conclusion

Perez's due process claim under *Zadvydas* is stalled for noncooperation, so the habeas petition is **DENIED WITHOUT PREJUDICE** to him refiling a new petition should his current detention go unimpeded and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on June 12, 2026.

Kyle C. Dudek
United States District Judge

6